# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SHANICE J. PARKER,**

    **Plaintiff,**

    v.                                            Case No.: 2:16-cv-1143
                                                    JUDGE GEORGE C. SMITH
                                                    Magistrate Judge Deavers

**ERIC M. MILLER,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court upon the Motion of Defendants Eric Miller, Dakotaland Transportation, Inc., and Fowlds Brothers Trucking, Inc. for Summary Judgment as to Plaintiff's Claims against Fowlds Brothers, and Motion for Partial Summary Judgment with Respect to Plaintiff's Punitive Damages Claim ("Defendants' Motion") (Doc. 21). The motion is fully briefed and ripe for disposition. For the following reasons, Defendants' Motion is **DENIED**.

### I.    BACKGROUND

Plaintiff Shanice Parker was involved in a single-car accident on April 12, 2016, while traveling eastbound on I-70 in Licking County, Ohio due to a malfunctioning tie rod in her vehicle. (Doc. 8, Am. Compl. ¶ 14). Parker's vehicle was disabled in the right-most lane of eastbound travel on I-70. (*Id.* ¶ 15). Shortly after, Ohio State Highway Patrol Trooper Rodney Hart arrived in his patrol car and parked it in the right-most lane directly behind Parker's disabled vehicle. (*Id.* ¶ 16). Hart activated the emergency lights on his patrol car and placed road flares to indicate that oncoming traffic should move over into the middle or left-most lanes. (*Id.* ¶ 17). Hart also asked Parker to be seated in the front passenger seat of the patrol car so he

could interview her regarding her single-car accident. (*Id.* ¶ 18). Within minutes, Parker was seriously injured when a tractor trailer driven by Defendant Eric Miller crashed into the parked patrol car in which Parker was seated. (*Id.* ¶¶ 19–28).

At the time of the accident, Miller was a truck driver employed by Defendant Dakotaland Transportation, Inc. ("Dakotaland") and was driving the truck as part of his job duties. (*Id.* ¶ 31). The truck involved in the accident was leased by Dakotaland from Defendant Fowlds Brothers Trucking, Inc. ("Fowlds"). (*Id.* ¶¶ 7–8; Doc. 21-1, PAGEID #309, Aff. of Jerald Fowlds, ¶ 5). Miller, Dakotaland, and Fowlds are all citizens of South Dakota, whereas Parker is a citizen of Ohio and/or Washington, D.C. (Doc. 8, Am. Compl. ¶¶ 1, 3–5).

In her Amended Complaint, Parker asserts claims for (1) negligence in operating a motor vehicle (against Miller); (2) statutory traffic violations establishing negligence per se (against Miller); (3) vicarious liability for Miller's negligence (against Dakotaland and Fowlds); (4) strict liability for Miller's negligence (against Dakotaland); (5) negligence in hiring, training, supervising, and retaining Miller (against Dakotaland and Fowlds); (6) statutory violations establishing negligence per se in the hiring, training, supervising, and retaining Miller (against Dakotaland and Fowlds); and (7) negligent entrustment of the tractor trailer to Miller (against Dakotaland and Fowlds). (Doc. 8, Am. Compl. ¶¶ 42–68).

Defendants previously moved to dismiss Parker's claims for punitive damages against all three defendants. (Doc. 10). The Court granted that motion as to the claims for punitive damages against Dakotaland and Fowlds, but denied the motion as to the punitive damages sought from Miller. (Doc. 26).

Defendants have now moved for summary judgment on all claims against Fowlds as well as partial summary judgment on Parker's claims for punitive damages against Miller. (Doc. 21). Defendants do not at this time seek judgment on any claims against Dakotaland.

## II. SUMMARY JUDGMENT STANDARD

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

## III.     DISCUSSION

Defendants have moved for summary judgment on all claims against Fowlds as well as on the punitive damages claims against Miller. The Court will discuss each of these claims in turn.

**A.     Claims against Fowlds**

Defendants argue that Fowlds cannot be vicariously liable for Miller's negligence in operating the truck, nor liable for its own negligence in hiring Miller or entrusting him with the truck, because Fowlds was merely the owner of the truck and not Miller's employer. Defendants are correct that each of the negligence claims against Fowlds require an employment relationship between Miller and Fowlds or that Fowlds itself entrusted the truck to Miller. *Osborne v. Lyles*, 63 Ohio St. 3d 326, 329, 587 N.E.2d 825, 828 (1992) (vicarious liability); *Peterson v. Buckeye Steel Casings*, 133 Ohio App. 3d 715, 729, 729 N.E.2d 813, 823 (10th Dist. 1999) (negligent

hiring, supervision, training, and retention); *Gulla v. Straus*, 154 Ohio St. 193, 198, 93 N.E.2d 662, 665 (1950). [1]

Parker counters that Dakotaland (whom the parties agree was Miller's employer at the time of the accident) is so related to Fowlds that they are essentially the same entity, and therefore Miller was also employed by Fowlds and Fowlds also entrusted the truck to Miller. Defendants do not challenge the claims of vicarious or direct negligence against Dakotaland in this motion; therefore, the only question before the Court is whether there is a genuine issue of material fact regarding the identity of Fowlds and Dakotaland.

### 1. The Graves Amendment

Both parties argue for and against the close relationship between Dakotaland and Fowlds with reference to whether the two companies are "affiliates" as defined by the Graves Amendment. 49 U.S.C. § 30106. The Graves Amendment was enacted to limit vicarious liability for companies in the business of renting or leasing vehicles and who could not prevent a lessee from driving a vehicle to a state which might hold a vehicle owner strictly liable for the negligence of the driver. *Stratton v. Wallace*, No. 11-CV-74-A HKS, 2014 WL 3809479, at *6 (W.D.N.Y. Aug. 1, 2014). The Graves Amendment states, in pertinent part:

> **(a) In general.**—An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
>> **(1)** the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>>
>> **(2)** there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

---

[1] As a federal court sitting in diversity, the Court applies the substantive law of its forum state. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

5

* * *

**(d) Definitions.**—In this section, the following definitions apply:

**(1)** Affiliate.—The term "affiliate" means a person other than the owner that directly or indirectly controls, is controlled by, or is under common control with the owner. In the preceding sentence, the term "control" means the power to direct the management and policies of a person whether through ownership of voting securities or otherwise.

Defendants argue that the Graves Amendment shields Fowlds from vicarious liability because it is merely the owner of the truck. Parker responds that the protection of the Graves Amendment is unavailable to Fowlds because its affiliate, Dakotaland, was itself negligent in hiring Miller and entrusting him with the truck. Defendants counter that Dakotaland is not Fowlds' affiliate because Fowlds did not have the power to direct the management and policies of Dakotaland.

Unfortunately, all of these arguments and responses are misplaced because the Graves Amendment is simply inapplicable to the case at bar. The plain language of the Amendment limits its application to claims that a vehicle owner is "liable under the law of any State or political subdivision thereof, *by reason of being the owner of the vehicle*." 49 U.S.C. § 30106(a) (emphasis added). Parker has not alleged any claims against Fowlds based on its ownership of the truck. Rather, all allegations against Fowlds stem from Parker's position that Miller was actually employed by Fowlds in addition to Dakotaland. (Doc. 8, Am. Compl. ¶ 52) ("At all times, Defendant Miller was the employee, agent, servant, and/or independent contractor for Defendant Dakotaland and/or Defendant Fowlds Brothers. Accordingly, Defendant Dakotaland and/or Defendant Fowlds Brothers are/is vicariously liable for the acts of Defendant Miller.").

Nor does Ohio impose the kind of strict, vicarious liability on vehicle lessors that the Graves Amendment was designed to limit. *Trolio v. McLendon*, 4 Ohio App. 2d 30, 34, 211 N.E.2d 65, 68 (7th Dist. 1965), *rev'd on other grounds,* 9 Ohio St. 2d 103, 224 N.E.2d 117

(1967) ("Ohio does not have a statute comparable to Section 402 of the California Vehicle Code, and there is no vicarious liability on the owner of a car, while such car is being operated by anyone else, merely because one is the title owner of the car."). Instead, Ohio imposes liability on a vehicle owner for the negligence of the driver only when the driver is an employee or agent of the owner and acting within the scope of the employment or agency. *Id.*; *Kellerman v. J. S. Durig Co.*, 176 Ohio St. 320, 323–24, 199 N.E.2d 562, 565 (1964).

Accordingly, it is irrelevant whether Fowlds and Dakotaland qualify as "affiliates" under the Graves Amendment. What matters is whether Fowlds was Miller's employer under Ohio law.

### 2. Alter ego analysis

If Fowlds and Dakotaland are alter egos of the same entity, then Fowlds was also Miller's employer and could be liable vicariously for Miller's negligence as well as Fowlds' own negligence in hiring Miller and entrusting him with the truck.

In determining whether one entity is the alter ego of another under Ohio law, courts consider whether the two entities:

(1) observe corporate formalities;

(2) keep corporate records;

(3) are financially independent;

(4) share the same employees and corporate officers;

(5) engage in the same business enterprise;

(6) have the same address and phone lines;

(7) use the same assets;

(8) complete the same jobs;

(9) maintain separate books, tax returns, and financial statements; and

7

(10) exert control over the daily affairs of the other.

*Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2015 WL 5047981, at *12–13 (S.D. Ohio Aug. 27, 2015) (Graham, J.) (citing *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05 CV 2205, 2006 WL 2225821, *6 (N.D. Ohio Aug. 2, 2006) and *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362–63 (6th Cir. 2008)).

Although the parties do not speak to these precise factors in their briefs (because they erroneously believed the Graves Amendment "affiliate" analysis governs), the facts relevant to both the "affiliate" and "alter ego" analyses are similar. Viewing the evidence of the relationship between Fowlds and Dakotaland in the light most favorable to Parker, it is clear that the two entities are related by much more than a leasing agreement.

To begin with, both companies have identical shareholders in identical proportions: the eponymous Fowlds Brothers, Bruce and Jerry Fowlds, each own 50% of both companies. (Doc. 30-8, Bruce Fowlds Dep. at 6–7). Bruce Fowlds is the president of both companies; Jerry Fowlds is the vice president of both companies. (*Id.* at 15–16). Both companies operate out of the same building in Sioux Falls, South Dakota and have the same mailing address. (*Id.* at 16). Starting around 2015, the companies shifted some of Dakotaland's employees to Fowlds in order for both companies to qualify as small employers under the Affordable Care Act. (*Id.* at 17). All of Fowlds' employees are loaned back to Dakotaland, though their payroll is processed through Fowlds. (*Id.* at 16–17).

The bulk of Fowlds' business is purchasing tractors and trailers for the purpose of leasing them to Dakotaland. Occasionally, Fowlds has taken a loan from Dakotaland in order to make down payments on new trucks, and then paid the loan back to Dakotaland. (*Id.* at 19). Bruce

Fowlds testified that "there really isn't any business at Fowlds Brothers other than Dakotaland transfers money into Fowlds Brothers' account that has automatic payments. That's about the extent of Fowlds Brothers' business." (*Id.* at 17). Bruce later clarified that Fowlds also leases about six tractor trailers to individual drivers. (*Id.* at 21).

In support of the companies' separate operations, Defendants point to the companies' separate bank accounts and a consulting agreement executed in January 2016 (three months prior to the accident causing Parker's injuries) which provides that Fowlds will act as a consultant for Dakotaland in exchange for a weekly payment of $25,000. (Doc. 31-1, PAGEID# 556–564). This arrangement would be more convincing as evidence that Fowlds was merely providing third-party staffing services were it not for the fact that all of the employees loaned by Fowlds to Dakotaland were originally Dakotaland employees in the first place who were shifted over to Fowlds for tax purposes, without any apparent change or interruption in their job duties or reporting structure.

When construing the facts in the light most favorable to Parker, the Court cannot say as a matter of law that Fowlds and Dakotaland are not alter egos of one another. Defendants' Motion as to the claims against Fowlds is therefore **DENIED**.

**B.      Punitive damages claims against Miller**

Punitive damages may be awarded if a plaintiff establishes that "[t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate." Ohio Rev. Code § 2315.21(C)(1). Parker and Defendants both identified the correct standard for actual malice:

> Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit

of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

*Preston v. Murty*, 32 Ohio St. 3d 334, 334, 512 N.E.2d 1174, 1174 (1987). "[A]ctual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross." *Villella v. Waikem Motors, Inc.*, 45 Ohio St. 3d 36, 37, 543 N.E.2d 464, 467 (1989) holding modified by *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 635 N.E.2d 331 (1994). But the actions of a defendant must rise above mere negligence or recklessness to be considered actual malice. "The focus is on the actor's conscious disregard of an almost certain risk of substantial harm. This distinguishes 'malicious' from 'non-malicious' conduct." *Kuebler v. Gemini Transp.*, No. 3:12-CV-114, 2013 WL 6410608, at *5 (S.D. Ohio Dec. 9, 2013) (Rose, J.). "The type of aggravated circumstances sufficient to support an award of punitive damages in a motor vehicle accident case may include intoxication and deliberate actions to flee the scene or evade responsibility." *MacNeill v. Wyatt*, 917 F. Supp. 2d 726, 730 (S.D. Ohio 2013) (Litkovitz, M.J.) (citing *Cabe v. Lunich*, 70 Ohio St. 3d 598, 640 N.E.2d 159, 163 (1994)).

Parker argues that Miller's actions demonstrate a conscious disregard for Parker's safety when he did not stop, slow down, or change lanes despite having ample time and visibility. Miller's deposition testimony is not inconsistent with this conclusion. Miller confirmed the following facts:

- The weather conditions at the time of the crash were sunny and clear; traffic conditions were steady, but not busy. (Doc. 30-7, Miller Dep. at 299–300).

- Miller crested a hill shortly before the crash; from the top of the hill, he saw the flashing lights of the patrol car in which Parker was seated about a half-mile to a mile away. (*Id.* at 301, 305). The lights appeared to be in either the far-right lane in which he was driving the tractor trailer, or on the shoulder. (*Id.* at 301).

- As he was at the top of the hill, Miller noticed traffic moving over into the middle or far left lanes. (*Id.* at 306). Miller estimated he had 30–60 seconds to move over into a different lane before he reached the lights. (*Id.* at 308).

- In the half-mile Miller estimated was between the top of the hill and the patrol car, he would have had time to bring his truck to a complete stop on the shoulder. (*Id.* at 308).

- Miller knew that his duty as a truck driver when he sees lights ahead is to slow down or change lanes, but did neither of these things. He does not know what caused him to do neither of these things when he saw the flashing lights on the patrol car. (*Id.* at 307).

- Miller first applied his brakes when he was 20–30 feet away from the patrol car. (*Id.* at 305).

- Miller knew that a collision between his truck and the patrol car could cause serious injury: "[T]he minute before, I was, like, please, nobody get killed in this, was, like, the last thought that went through my head before—before the impact." (*Id.* at 311).

Defendants argue that Miller's failure to avoid the crash "amount[s] to a driving mistake" that is "insufficient to demonstrate that Miller acted with the requisite intent or mental state to support a jury finding that damages could be awarded." (Doc. 22, Mem. in Supp. of Mot. for Summ. J. at 10; Doc. 31, Reply in Supp. of Mot. for Summ. J. at 9). But Miller was aware of a parked vehicle with flashing lights in his path; he knew that a collision with that vehicle carried a risk of serious injury or death; he had a half-mile to a mile and 30–60 seconds to stop, slow down, or change lanes; and he has no explanation for why he nevertheless failed to take any action to avoid the crash until he hit the brakes 20-30 feet away from the patrol car. The Court disagrees that no reasonable factfinder could find a conscious disregard for Parker's safety on these facts. Defendants' Motion as to the punitive damages claims against Miller is therefore **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment as to Plaintiff's Claims against Fowlds Brothers, and Motion for Partial Summary Judgment with Respect to Plaintiff's Punitive Damages Claim, is **DENIED**.

The parties are encouraged to reconsider their position on participation in the March settlement week. If the parties do wish to participate, they may contact Magistrate Judge Deavers' chambers to schedule a mediation through the Court.

The Clerk shall remove Document 21 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**